1            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
2                  MIAMI DIVISION
            CASE NO.  09-21010-CR-JEM
3


4
    UNITED STATES OF AMERICA,
5
                      Plaintiff.
6
        vs.
7
                              Miami, Florida
8                             February 26, 2010
    JOEL ESQUENAZI,
9   CARLOS RODRIGUEZ,
    ROBERT ANTOINE,
10  JEAN RENE DUPERVAL,
    and
11  MARGUERITE GRANDISON,

12                    Defendants.
    _____

13

14

15            TRANSCRIPT OF STATUS CONFERENCE
        BEFORE THE HONORABLE JOSE E. MARTINEZ
16          UNITED STATES DISTRICT COURT JUDGE

17

18

19

20

    REPORTED BY:        DAWN M. WHITMARSH, RPR
21                      Official Court Reporter
                        400 N. Miami Avenue, 10S03
22                      Miami, Florida  33128
                        Telephone:  305-523-5598
23

24

25


USA v ESQUENAZI, et al.

```
 1    APPEARANCES:
      FOR THE PLAINTIFF:
 2                              United States Attorney's Office
                               BY:  AURORA FAGAN, A.U.S.A.
 3                             99 N.E. 4th Street
                               Miami,  Florida 33132
 4
                               United States Department of Justice
 5                             Asset Forfeiture and Money Laundering
                               BY:  KEVIN GERRITY, A.U.S.A.
 6                             1400 New York Avenue NW
                               Suite 10100
 7                             Washington, DC 20530

 8    FOR THE DEFENDANTS:

 9                             BY:  RICHARD JOHN DIAZ, ESQ.
                               3127 Ponce De Leon Boulevard
10                             Coral Gables, Florida 33134
                               For Defendant Esquenzi
11
                               BY:  ARTURO V. HERNANDEZ, ESQ.
12                             2937 Southwest 27th Avenue
                               Suite 101
13                             Miami, Florida 33131
                               For Defendant Rodriguez
14
                               Joseph Beeler, P.A.
15                             BY:  JOSEPH BEELER, ESQ.
                               Penthouse Two
16                             800 Brickell Avenue
                               Miami, Florida 33131
17                             For Defendant Duperval

18                             Michael Blacker, P.A.
                               BY:  JOHN EDWIN BERGENDAHL, ESQ.
19                             PO Box 162850
                               Miami, Florida 33116
20                             For Defendant Duperval

21                             Brinkley, Henrys & Lewis
                               BY:  RODERICK DARRELL VEREEN, ESQ.
22                             4770 Biscayne Boulevard - Suite 1200
                               Miami, Florida 33131
23                             For Defendant Grandison

24

25
```

**USA v ESQUENAZI, et al.**

```
 1                      P-R-O-C-E-E-D-I-N-G-S
 2          COURTROOM DEPUTY:  Case number 09-20010-criminal-Martinez,
 3     United States of America versus Joel Esquenazi, Carlos
 4     Rodriguez, Jean Rene Duperval and Marguerite Grandison.
 5          Counsel, please state your appearance.
 6          MS. FAGAN:  Aurora Fagan and Kevin Gerrity for the United
 7     States.  Good afternoon.
 8          THE COURT:  Good afternoon.
 9          MR. DIAZ:  Your Honor, please, good afternoon.  Richard
10     Diaz on behalf of the defendant Joel Esquenazi, he's present
11     sitting in the back here.
12          THE COURT:  Mr. Diaz.
13          MR. HERNANDEZ:  Good afternoon, Arturo V.  Hernandez on
14     behalf of Carlos Rodriguez.
15          THE COURT:  Mr. Hernandez.
16          MR. BERGENDAHL:  Good afternoon, Judge.  John Bergendahl
17     and Joseph Beeler on behalf of Mr. Duperval.  Mr. Duperval is
18     present.
19          Mr. Beeler and myself are temporary counsel, Judge, at
20     this point.
21          THE COURT:  What does that mean?
22          MR. BERGENDAHL:  It means that we have filed temporary
23     notices of appearance.  There is a report re: counsel scheduled
24     for Monday.  Mr. Duperval is still in the process of attempting
25     to make arrangements to retain us on a permanent basis.
```

**USA v ESQUENAZI, et al.**

```
 1        THE COURT:  okay.  Well, Monday, you're either in or out.
 2   I guess.  I mean, I don't know.  Is that the magistrate that
 3   set a hearing?
 4        MR. BERGENDAHL:  Yes, Your Honor.
 5        THE COURT:  Okay.
 6        MR. VEREEN:  Judge, good afternoon.  Roderick Vereen on
 7   behalf of Marguerite Grandison.
 8        THE COURT:  Good afternoon, Mr. Vereen.
 9        All right.  We're here on the status conference basically
10   to see what exactly the status is.
11        Mr. Diaz, I believe you had a trial in Texas that I
12   understand -- wasn't it?  Well, it was Mr. Hernandez, someone
13   had a trial in Texas.
14        MR. HERNANDEZ:  It gets confusing, Judge, but in any event
15   my name is Art Hernandez and I represent Carlos Rodriguez today
16   before the Court.
17        You're exactly correct, I did file a motion for
18   continuance.  Excuse me, Your Honor, would it be your
19   preference that I speak from here?
20        THE COURT:  I don't care.  You can do it sitting down,
21   standing up, whatever you want.  You can do it from the
22   lectern, you can do it from your chair.  I can hear you.  As
23   long as you use a microphone, I don't care where you do it
24   from.
25        MR. HERNANDEZ:  If it pleases the Court, I'm just fine
```

**USA v ESQUENAZI, et al.**

1    with where I'm at.

2         THE COURT:  Doesn't make any difference at all.

3         MR. HERNANDEZ:  Your Honor, the Court is exactly correct.

4    I did file a motion for continuance on behalf of Mr. Rodriguez

5    as a result of a conflict in my schedule that I had in Texas in

6    the case of United States versus Luis Posada Carilles.  That

7    case subsequently was continued at the request of the

8    government, really at the 11th hour.  We do not have a trial

9    date set.  We have a status conference to set a trial date on

10   May the 20th of this year before Judge Cardone.  That was only

11   one prong of my request for a continuance.

12         But in response to the Court's inquiry, the conflict no

13   longer is a basis upon which I would rely.

14         THE COURT:  That's why I don't always jump to continue

15   cases when there are conflicts because they usually work

16   themselves out.

17         But in this case, we obviously can't go to trial Monday.

18   But I don't have a problem with putting it off a month or two.

19         Let me hear from the government what your position is.

20         MS. FAGAN:  Yes, Your Honor.  We would prefer to try all

21   the defendants together.  There are two defendants who have not

22   yet been arraigned, that is Mr. Antoine and Mr. Duperval.

23         THE COURT:  They're being arraigned like next week.

24         MS. FAGAN:  Yes, Monday.  So we do need at least 30 days

25   from Monday.

**USA v ESQUENAZI, et al.**

```
 1        And, Your Honor, we did just today give defense counsel an
 2   additional discovery CD.  We've made -- there's tens of
 3   thousands of documents in discovery in case.  We've made them
 4   all available for inspection, but we did give what we consider
 5   quote, unquote, hot documents, which are over 10,000 documents
 6   to them on CDs so they don't have to come to our office.
 7        Your Honor, I've also given them copies of the Haitian
 8   penal code and I do have a copy for the Court, if I may
 9   approach.
10        THE COURT:  Why would I want the Haitian penal code?  What
11   am I supposed to do with it?  What do you want me to do with
12   it?
13        MS. FAGAN:  Well, it is one of the objects of the --
14        THE COURT:  Well, I'm sure it is.  Well, yeah, sure.  Go
15   ahead.  Come on, bring it up and give it to my law clerk.
16   She'll probably do something with it.  I won't.  I promise you.
17        Actually, I think I have read the Haitian penal code when
18   I was in the Navy, I did a thing with a comparative legal
19   systems.  That was very interesting.
20        MS. FAGAN:  It's not the entire one, it's just an excerpt.
21        THE COURT:  Okay.  All right.  Well so -- I'll tell you
22   what we'll do.  We are going to set this case for April 12th,
23   calendar call April 8th.  First day of trial is April 12th.
24        MR. GERRITY:  Your Honor, I apologize to interrupt but
25   April 12th, I actually have -- I'm in the reserves in the Navy
```

**USA v ESQUENAZI, et al.**

1    and I have active duty orders for that particular week.

2         THE COURT:  I don't think I have a lot of options though.

3    Don't I have speedy trials?  I mean, couple of the people have

4    waived speedy trial.

5         MR. HERNANDEZ:  I certainly would on behalf of

6    Mr. Rodriguez and would follow this up with a written waiver if

7    the Court is so inclined to require one.

8         I would like, Your Honor -- I mean, the whole issue of

9    this case, it's very difficult to embrace in the context of

10   just a single presentation before Your Honor.  But really, this

11   is a very large endeavor.  I briefly met with my colleagues

12   before walking into the courtroom and we're all in agreement as

13   to the size of this case and what it would take to render

14   effective assistance of counsel on behalf of the clients,

15   irrespective of any potential conflicts that lie out there.

16        What the Court needs to understand, you've just heard a

17   representation from Ms. Fagan on behalf of the government that

18   existing -- the existing pool of documentation, at this point,

19   stands at 10,000 pages of documents.  And that's probably

20   conservative.  Based upon the government's response to my

21   brother counsel, Mr. Diaz, when he filed a motion to compel,

22   there are more CDs that we expect to get.  So the universe of

23   documentation, very clearly, is going to expand beyond this

24   10,000 pages, which is enormous in and of itself.

25        In addition to that, we have two defendants who have not

**USA v ESQUENAZI, et al.**

1    yet have permanent counsel or counsel of record in the file.

2    So if I may say, by way of recommendation to the Court a

3    suggestion, a respectful one, I believe that what the Court

4    should do is set this matter, instead of setting an artificial

5    trial date, because knowing what happened in Haiti, the tragedy

6    of the earthquake, there are going to be very, very significant

7    legal issues raised under Rule 901, Authentication of Foreign

8    Documents, or the Foreign Records Rule of the Federal Rules of

9    Evidence for authentication purposes that are going to be quite

10   extensive.

11       THE COURT:  Isn't that her problem?

12       MR. HERNANDEZ:  It is her problem, but we still have to

13   make those challenges based upon the records that we are

14   receiving.  And most of these records, based on their response,

15   come from structures in Haiti in Port Au Prince that no longer

16   exist.

17       THE COURT:  I can tell you right now I'm not going to do

18   that, and the reason I'm not going to do that is I'm not going

19   to let some other judge in some other district set a case and

20   then we'll have to have a continuance for that reason.

21       No, we're going to set a trial date which I have, April

22   8th, April 12th.  If the documents they haven't given to you

23   and they give them to you too late, they can't use them,

24   period.  Move on.

25       MS. FAGAN:  Your Honor, we've made them available, we

```
 1    haven't heard from anyone --
 2         THE COURT:  Okay.  But what I'm saying to you is if you
 3    don't make them available and it's not something, then move on.
 4         MS. FAGAN:  They're all there.
 5         THE COURT:  If you can't handle it, hire somebody to help
 6    you.  If you can't do it with somebody -- if you can't do it,
 7    you can't do it.  I've been involved in big cases and I know
 8    that you all have too and sometimes you can't handle a case
 9    because it's too big.  I've had plenty of cases that I've had
10    to turn down because I was a very small firm.
11         But bottom line is if the material is available to you,
12    we'll move on.  If we come up with a problem, we'll deal with
13    that problem.
14         Now, Ms. Fagan, I want to make absolutely sure that I
15    don't fall into anything.  Now, we had a motion for continuance
16    by Mr. Esquenazi joined in by Mr. Rodriguez; is that correct or
17    vice versa?
18         MR. HERNANDEZ:  It's Mr. Hernandez on behalf of
19    Mr. Rodriguez.
20         MS. FAGAN:  That's not what I understood.  I thought it
21    was, and you can correct me if I'm wrong, Mr. Hernandez, but I
22    thought it was your motion and that Mr. Diaz did not object,
23    which is why there was the speedy trial issue.
24         THE COURT:  Okay.
25         MR. HERNANDEZ:  That's what I said, Your Honor.  It was my
```

USA v ESQUENAZI, et al.

1   motion.

2       THE COURT:  Okay.  All right.  But if there is not an

3   agreement that speedy trial is waived by the continuance, we

4   can start Monday.  I don't care.  We'll start with what we got,

5   with whatever defendants are here.  If Mr. Beeler's client

6   hasn't been arraigned, then he'll be tried later.  But I'm not

7   going to get stuck in a crack because somebody wants a

8   continuance and somebody else doesn't want a continuance.

9       MS. FAGAN:  No, Your Honor.  I think they were -- not only

10  -- and Mr. Diaz, I don't want to speak for you.

11      THE COURT:  Mr. Diaz just said that he was willing to

12  waive, isn't that correct, Mr. Diaz?

13      MR. HERNANDEZ:  No, it's Mr. Hernandez.  I said I was

14  willing to waive speedy trial.

15      THE COURT:  I was looking at Mr. Diaz because his client

16  is the one that I need to waive.  You filed a motion.  I

17  suspect that that would probably be construed as a waiver.

18      MR. HERNANDEZ:  I agree.

19      THE COURT:  And I'm asking Mr. Diaz, on behalf of

20  Mr. Esquenazi, what his position on speedy trial is.

21      MR. DIAZ:  Judge, our position on speedy trial, after

22  Mr. Hernandez asked me if I would concede to or join in on his

23  motion, I didn't have, at that time, a knowledge of what the

24  government's evidence would be.

25      Having received that recently after Mr. Hernandez filed

**USA v ESQUENAZI, et al.**

1    his motion, I said all I can do at this point is not object.

2         I can tell this Court, in no uncertain terms, after trying

3    cases three, four, five month trial cases in this district for

4    over 22 years, I will not be effective for my client, not

5    withstanding taking on no new business between now and April,

6    for an April trial date with the volume of documents that the

7    government is providing me with alone.  It just cannot be done.

8         THE COURT:  You're talking about three, four, five months

9    in this case?  I was told it was 14, 15 days.  Who's fudging?

10        MR. DIAZ:  No, what I'm saying is I have tried very

11   lengthy trials in this district.  And I know the type of work

12   and preparation that needs to be done when you have a 10,000

13   plus document case, number one; number two the possibility of

14   needing to at least try to go to Haiti to get defense witnesses

15   and/or defense documents and getting those out of there; number

16   three, this case has uncommon or non-traditional legal issues

17   such as statute of limitations, the tolling order itself, bill

18   of particulars and pre-indictment delay.

19        THE COURT:  You know what we're going to do, I got another

20   calendar call on this right now which is Jorge Gimenez and

21   Renascence Community Healthcare Center which is an FLSA case.

22   Let me call that and call the calendar, and we'll get right

23   back to this and finish this up.  There's no sense in having

24   them sit here and -- well, I guess they can afford the big

25   bucks while they're getting paid to listen.

**USA v ESQUENAZI, et al.**

```
 1        MR. VEREEN:  Your Honor, I have another matter with

 2   Magistrate Brown with regard to a case that is also before Your

 3   Honor at 2:00.

 4        THE COURT:  Okay.  What's your position on the trial date

 5   of Monday?

 6        MR. VEREEN:  Terrible Judge, terrible date for trial.  I

 7   join with the rest of my colleagues.

 8        THE COURT:  What's your position on speedy trial?

 9        MR. VEREEN:  My client would waive the speedy trial,

10   Judge.  She's out of custody.

11        THE COURT:  I may need to get a written waiver.  Will you

12   ask somebody to stand in for you?

13        MR. VEREEN:  I've already spoken to Mr. Diaz and he said

14   he would stand in for me.

15        THE COURT:  Okay.  That will be fine.  Okay.  Call the

16   other case Wanda.

17                          *  *  *  *  *

18

19        THE COURT:  All right.  Please call the other case back.

20   Come on back, folks.

21        COURTROOM DEPUTY:  Recalling case number

22   09-21010-criminal-Martinez, United States of America versus

23   Joel Esquenazi, Carlos Rodriguez --

24        THE COURT:  Et al.  Et al.  And others.  All right.

25        Sorry for the interruption, but I didn't see any sense in
```

**USA v ESQUENAZI, et al.**

1    making them stay while we were chatting.

2        Okay.  So what are you saying to me, Mr. Diaz?  You were

3    in the middle of telling me something and Mr. Beeler was

4    waiting in the wings to supplement or say something else.

5        MR. DIAZ:  Well, you know, it's age before beauty but I

6    guess I'll break the tradition here.  The situation, Judge, is

7    I think that --

8        THE COURT:  You're just better preserved.  Mr. Beeler is

9    not as old as he looks.

10       MR. DIAZ:  Or maybe I'm younger than I look.

11       But in any event, Judge, the first thing I need to do is I

12   need to master and get my arms around 10,000 documents.

13   Assuming I don't take on another case in my office, that's

14   going to take several weeks.

15       Once I finish that, I then determine whether or not, in

16   addition to the motions I've already identified are going to

17   have to be filed in this case, there may be other discovery

18   motions.

19       THE COURT:  But you see, it's been my -- you know, it's

20   kind of like when you're picking a jury and you give 10 minutes

21   for the lawyers to consult and do everything.  And then you say

22   okay, let's time, and every time, we need another minute.

23       If I give you -- if I put this case until April the 12th

24   and you can convince me that it needs to go on further, well

25   I'll do that.  But you know what, if I give you until June 12th

**USA v ESQUENAZI, et al.**

1    you're probably going to come up with the very same reasons in

2    June that you will in April.  So I'd rather start hearing it in

3    April so that by June I'll know if you're feeding me a line or

4    if it's something that we better really deal with.

5        I think I better keep a better handle on it than to set it

6    off for the distant future.  If I don't set it at all then

7    somebody is else is going to set a trial and they're going to

8    say well, I set mine first and therefore I have priority.  And

9    I'm going to end up where I'm not going to be able to find --

10   let me ask first, Ms. Fagan, what is your best estimate of how

11   long this case will take?

12       MS. FAGAN:  Well, from the government's perspective, I

13   would say two weeks.

14       THE COURT:  Okay.  You mean you think that it will take

15   two weeks for you to put your case on and for them to put their

16   case on?  Or you think it will take two weeks for yours because

17   unless I give a directed verdict, then that's not the end of

18   the case.

19       MS. FAGAN:  I would think -- it's hard for me to say

20   because there are bank documents and so I don't know what

21   stipulations we would be able to get from all defense counsel.

22   But I would say two weeks for the government's case.

23       THE COURT:  Okay.  And then we don't know what the defense

24   case is going to be, but I would assume that logic is that it

25   usually takes a little less time but you budget for about the

1  same amount of time.  So you're talking about four weeks.

2      There aren't a lot of four week empty -- empty four weeks

3  in my calendar for the next several years, but I got to fit it

4  in somewhere.

5      MS. FAGAN:  Your Honor, I would just ask if we can have

6  the next trial period starting April 26th because my co-counsel

7  will be on active duty the week of the 12th.  He's being sent,

8  he got his orders.

9      THE COURT:  Are you in the Navy JAG?

10     MR. GERRITY:  Yes, I am, sir.

11     THE COURT:  See, you guys in Navy JAG are so busy flying

12 those jet planes off the aircraft carriers.  I have to tell you

13 that in my 30 years in Navy JAG, I never once saw a female JAG

14 officer that looked like that one on the TV show.  Never once,

15 and I looked a lot but I never saw one.

16     Okay.  Far be it for me to interfere with the defense of

17 our country.  I think it is essential that we keep strong.

18     Wanda, what's the story?  What do I have then?  Where am I

19 then?

20     COURTROOM DEPUTY:  If we start the trial April 26th, okay,

21 it has to finish by May -- I'm sorry.  It has to finish by May

22 7th because you have a Fort Pierce calendar.

23     THE COURT:  Wait.  Where is your active duty?  Where are

24 you going?

25     MR. GERRITY:  I'm actually going to San Diego sir to

**USA v ESQUENAZI, et al.**

1    Coronado.  It's a detachment with the naval justice school.

2        THE COURT:  And the detachment that naval justice school

3    on the west coast?

4        MR. GERRITY:  I'm attached actually to Newport, Rhode

5    Island.

6        THE COURT:  What are you going to San Diego to do, is what

7    I'm asking.

8        MR. GERRITY:  I'm instructing a course.

9        THE COURT:  Okay.  You know what, the odds of our actually

10   being on trial on April 12th is about as good as Cindy Crawford

11   calling me up and asking me for a date.  Maybe a little bit

12   better than that.

13       I would -- I'm going to leave it for April 12th.  I don't

14   think you should change your travel plans or request your

15   orders to be cancelled.  But I'm going to set a date and then I

16   can continue that if I need to, but it a least I have a date.

17   And nobody can slip in ahead of me.  Not that I'm suggesting

18   that any other judges would do that, but I have caused things

19   to go in the past.

20       I would be happy to hear from you as to what it is that

21   you need and how long you need to do it once you start looking

22   at the files.  But I'm not going to do it based on she said

23   there's a lot of files.  Yeah, you know what, I think I've seen

24   people, you know, I don't want to say play that game in the

25   pejorative sense, but I've seen people play that card in the

USA v ESQUENAZI, et al.

1    past and sometimes there are 10,000 really good, solid

2    documents.  Sometimes what you really need is somewhere in

3    those 10,000 documents, and you probably won't have to review

4    all of them.  You just have to find out which box it is that

5    you really need to open.

6         And I don't know.  You know, that's what you get the big

7    bucks for to figure that out.

8         MR. DIAZ:  Judge, just two quick comments.  I know

9    Mr. Beeler wanted to address the Court --

10         THE COURT:  I noticed.

11         MR. DIAZ:  to give you an idea from his perspective as to

12    what perhaps ultimately an out date would be.

13         But the first comment I would like to make to the Court is

14    this:  At this counsel table, at defense counsel table are four

15    lawyers who have been practicing in this district for over 20

16    years each.  And they're all very serious, I think we're all

17    very serious and sober lawyers.  None of us of which would be

18    trying to play in the pejorative a card to delay the trial

19    unnecessarily.  That is not -- I know it's not mine and I would

20    seriously doubt that any of these lawyers --

21         THE COURT:  I thought it was human nature personally.

22         MR. DIAZ:  No, I don't think -- that's not the case here,

23    Judge.  The problem is we're trying to look at a realistic

24    target date.  And just so you know, if we were to start on the

25    12th, if we were to start on the 12th, in that period, I have a

USA v ESQUENAZI, et al.

1    prepaid vacation from the 22nd to the 25th.  It's a four day

2    vacation, but it is a 50th anniversary, it's with my wife in

3    St. Barth.

4         THE COURT:  That just means we have to really work hard

5    and get through fast, wouldn't we.

6         MR. DIAZ:  I don't want to give up my true age, but it's a

7    very significant event.  A lot of people are going, and you

8    know, so it's three days out of that week, nevertheless.

9         THE COURT:  I would never require you to miss your 50th

10   anniversary.

11        MR. DIAZ:  50th birthday.

12        THE COURT:  I was going to say, you really are older than

13   you look if it's your 50th anniversary.

14        MR. DIAZ:  Birthday, anniversary.

15        THE COURT:  You really are older.  You said anniversary.

16   You meant birthday?  Okay.  That's different.

17        MR. DIAZ:  But I know Mr. Beeler wanted to make a few

18   comments as well.

19        THE COURT:  All right.  Let me hear from Mr. Beeler.

20        MR. BEELER:  Your Honor, I think I understand what you

21   want to do and that is, among other things, to maintain control

22   over the case so it just does not become a problem.  That, to

23   me, is a good idea.

24        There's been an inquiry as to people's position concerning

25   the speedy trial act.

**USA v ESQUENAZI, et al.**

1    THE COURT:  Yes.

2    MR. BEELER:  And I have two observations there.  Number

3    one, I think that when folks have a chance to look at the

4    discovery and to address you further, people will be able to

5    show you that this is one of those cases which, by its very

6    nature, can be continued because of the complexity of the case.

7    Legal complexity, factual complexity.

8    THE COURT:  Yeah, I think I could do that.  But you know

9    what, there's some discretion involved in that where there's --

10   if I have waivers, there's no discretion necessary.

11   MR. BEELER:  Well, I said I had two points.

12   THE COURT:  Okay.

13   MR. BEELER:  And the second point is, I believe I have the

14   authority, on behalf of Mr. Duperval, to toll during this time

15   period the running of the speedy trial act.  Make no objection.

16   Because it's our position that it is necessary preparation time

17   and whatever waiver is required orally or in writing --

18   THE COURT:  You know, let me be real clear, Mr. Beeler.  I

19   don't want you to talk unnecessarily because I'm not -- I don't

20   think we're at cross purposes here.

21   I do not believe that it is likely that this case will go

22   to trial on April 12th.  I think that the normal progression

23   will be that you all will resolve your status as temporary

24   counsel.  If you become permanent counsel, you will start

25   working on the case.  All of you will get together and you will

**USA v ESQUENAZI, et al.**

 1   sent me a note saying we can't possibly go to trial until such

 2   and such a time, this is what we have to do, here are waivers

 3   of speedy trial on behalf of everyone, can we have that, and I

 4   will almost certainly grant that.

 5        But I don't want to, in four or five weeks, I don't want

 6   to, in April, have everybody come in and say okay, now we're

 7   talking about set the trial, we think it's going to take us --

 8   because whatever you tell me on April 8th, you've got plenty of

 9   chance to tell me before then.  And I know it's just not going

10   to happen on April 8th.  I also know if there are going to be

11   any pleas in the case, they're not going to happen until we

12   have a firm trial date.  And if we have a firm trial date,

13   we'll go from there.

14        I think we'll probably not go to trial, but you'll give me

15   good reasons, Ms. Fagan will -- she seems to be a reasonable

16   person.  I have never seen her throw little snit fits and be

17   totally unreasonable so, you know, we'll work it out.

18        But I think I need to set a date and that's what I want to

19   do today.  Go ahead, Mr. Beeler, finish.

20        MR. BEELER:  And I think we are communicating precisely.

21        The only other comment I have is a document was filed by

22   the government yesterday, docket entry 113.  It's their

23   response to a codefendant's motion.  But I noticed by reading

24   it, and particularly paragraph five, that not only has the

25   government of Haiti been slow in providing documents, but the

**USA v ESQUENAZI, et al.**

1   Bureau of, I guess it's Economic and Financial Affairs

2   building, has been damaged in the earthquake and they're saying

3   they can't produce documents.  This is likely to hurt the

4   defense as well as the government --

5       THE COURT:  Yeah, because they already got their

6   documents.  I understand that.  You know, Mr. Beeler, you do

7   have one benefit and that is I was on Ms. Fagan's side of the

8   courtroom for about three years.  I was on your side of the

9   courtroom or -- excuse me, I should go back.

10      I was on the other lawyer's side for four years, then her

11  side for three years, then I was on your side for about 30

12  years.  So I have a pretty good understanding of the benefits

13  that are -- that come from being on that side and how much

14  easier it is to get things done.

15      I also understand the difficulties of being on your side,

16  and I would get really upset at judges that wouldn't understand

17  that I had a life and that I had other cases and that I had to,

18  you know, go hustle other cases or I wouldn't be able to make a

19  living when this case was done.  I understand all those things

20  and I'm not going to hurt you.  I don't think I'm unreasonable.

21      But I also have found that if I am really nice to everyone

22  and give in immediately on everything that you ask, I would

23  never get anything done because I know that you honestly

24  believe that you have to have X amount of time.  Maybe you do,

25  maybe you don't.  I will listen and I'll give you what I think

**USA v ESQUENAZI, et al.**

1    you need and sometimes I'm wrong.  But I'm more than willing to

2    be shown that I'm wrong and I'm more than willing to back off

3    and say okay, you've convinced me you're right.

4         So I'm not going to hurt you.  I hope that you two get

5    your status resolved and come into the case.  I look forward to

6    having competent lawyers on both sides.  It would be an

7    enjoyable thing, even if -- the best thing would be if it all

8    went away, but that's not going to happen.  So I will be happy

9    to have you in the case and I will be happy to have everybody

10   happy.

11        But, you know, I just have to try to go down the middle

12   road.  And so, in response to your unsaid, you know, question,

13   I'm going to set it for April the 12th, but I am more than

14   happy to hear you when you file something telling me what's

15   happening.  But be reasonable and understand that I've been

16   there, I've reviewed thousands of documents.

17        I was -- the last five years of my trial experience was in

18   tobacco.  And so you know very well that we didn't just get

19   thousands of documents, we got gazillions of documents.  And I

20   know how hard it is to do that, especially when my firm was

21   four lawyers or five lawyers.  So it's very difficult.

22        But bottom line is we need to have a firm date and I'm

23   going to set it for April 12th, calendar call April 8th, don't

24   change your travel plans and don't cancel your vacation.  But

25   if nobody files anything we're going to trial then.  All right?

**USA v ESQUENAZI, et al.**

1     Ms. Fagan, do you got a comment?

2     MS. FAGAN:  I was just wondering, so are defense counsel

3  filing the waiver of speedy trial or no, not at this time?

4     THE COURT:  Everybody is going to file a waiver of speedy

5  trial until the 8th, otherwise Monday is the date.  And I can't

6  take those two because they're not ready.  But the ones that

7  have already been done, I think everybody has said that they

8  intend to -- yes, sir.  Mr. Hernandez.

9     MR. HERNANDEZ:  I filed a motion for continuance.  Does

10  that apply to my client as well?

11     THE COURT:  No, I think your filing, your motion is clear,

12  is clean, but I think I would like one from Mr. Diaz's client

13  and I would like one from, if you come in to the case, from

14  your client and from Mr. Vereen's client.  So if you could pass

15  that on to Mr. Vereen.

16     MR. DIAZ:  That's fine, Judge.  I'll do that for both my

17  client and Mr. Vereen's.

18     THE COURT:  That's right.  You're Mr. Vereen's mouthpiece.

19  Okay.  He's over there defending against a pro se defendant

20  that wants him fired, so I suspect he'll be over there for a

21  couple of hours maybe.

22     All right.  Anything else?

23     MS. FAGAN:  No, sir.

24     MR. DIAZ:  No, sir.

25     THE COURT:  All right.  Thank you very much.  I'm sorry it

**USA v ESQUENAZI, et al.**

1    took so long, but I thought I should get the FLSA case out of

2    the way.  All right?

3        Wanda, you let me know when you get all the documentation.

4        You all go on about your business.  I'm going to log out

5    of here.

6        Thank you, Dawn.

7

8        (PROCEEDINGS CONCLUDED)
                           * * * * *

9

                    C E R T I F I C A T E
10   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.
11

12

13

14
     _____           /s/ Dawn M. Whitmarsh
15   Date                       DAWN M. WHITMARSH, RPR

16

17

18

19

20

21

22

23

24

25

**USA v ESQUENAZI, et al.**